Good morning, and on behalf of my colleagues, Judge Hawkins and Judge Bail, welcome to the Ninth Circuit. We have one case set for argument today, and we have a number of cases that are on the calendar that have already been submitted. The following cases have been previously submitted. Balbi Moreno v. Bondi, Alvarez Meza de Garcia v. Bondi, Cavan v. Bisignano, Castro, Rubio v. Bondi, and Singh v. Bondi. The one case on the argument calendar is Permadev v. IMAGPICS, MaXXiMedia, and the parties have 15 minutes aside. So counsel, when you are ready. Thank you, and may it please the Court, I'd like to reserve five minutes for rebuttal. May it please the Court, I'm Greg Hensrud of the Kleindienst Firm. I represent MaXXiMedia Advertising Company. Before the Court today is a relatively simple question, which is whether or not the district judge acted appropriately in determining that there was no ambiguity in a contract such that summary judgment was appropriate. We believe not only is that determination wrong, but in fact, summary judgment should have been entered for MaXXiMedia Advertising Company, and there are four reasons for that. You're talking about the contract claim. I am. I am, and I think, Your Honor, that's sort of the predicate to everything we're here for today. We can talk about how it affects the other things, but realistically, that's essentially what I'm going to argue. I think it's the primary claim for all of them. So the first issue, as we always start in the law, is with the plain language of the agreement, and I won't go through the panel, all of the various portions of it, but I will say, rarely, if ever, in my career have I seen an opinion which outlines summary judgment with a rationale that excludes the very word that is the crux of this dispute, which is the word additional. If you look at the rationale that the district judge applied, it continues to discuss services, but never distinguishes or tells the reader how additional services does or doesn't play in to this dispute. What were they paying for? What was the 6% for, if it wasn't for what you claim? Are the non-included additional services? I would just point to paragraph 4 answers your question exactly. The client agrees to pay the agency for all media placement slash buying an agency commission or fee. That is what the commission is for under the plain language of the contract. Media placement slash buying, and the court will not find another provision outlining payment other than the additional services provision. And I think what's helpful in addition to the plain language for the panel to assess is the parallel structure that we see throughout the agreement. So in the beginning we have in the preamble services and a definition there, which again relates to the media placement slash buying issues, but then in paragraph 1, when the subheading services is used, the first part specifically articulates the services necessary to purchase and place all media for client, specifically for television. If the court then moves to the fourth paragraph, the part I just read is the exact parallel of that. For those services, a commission of 6% will be paid. If you go back to paragraph 1 and look at the last sentence, additional services may include, but are not limited to, research, market planning, public relations, web digital design, and relevant for today, creative services. Prior to termination for media terminating the contract, had your client ever submitted an invoice for additional services? Costs, Your Honor, and before the course of dealing for the contract, but between 2020 when the contract was initiated in 2022, the services like post-production, etc. were not provided. There were no invoices provided for those. The answer to my question is no. Yes, with the caveat of that period of time, if that's what you're asking. The answer to the question is no. And, you know, I think when we get down the road into, you know, argument number four, I think it's relevant here, which is, you know, this court is charged with giving effect to the language of the agreement. And the language of the agreement in paragraph five specifically says additional products and services and allowable expenses may be invoiced at any time. So for the July 8th, 2022 letter ER 1500, etc., where in the first paragraph it says 3.1 or so million, the contract would have allowed 3.1 million, 6.1 million, 12.1 million, whatever number your client thought was appropriate for these additional services. Those are distinguished. All I'm talking about is the copyright, the creative services. But as to those, the reason those came into play was because in the termination agreement, they demanded additional things like non-disparagement, etc. Those were not part of the contract. So he said if you want non-disparagement, here's the price point. That was not a demand. Although the letter, if I'm reading it correctly, says they're in default by failure to make payment when due in the amount of 3.1, etc., related to advertising, marketing, and related services performed and scheduled for the month of May 2022. Yeah, well, there were. So at that time, we have not only the 1.38, there was additional services, there were the commissions piece was in there as well, Your Honor. I don't remember what the last roughly million dollars was at that point, but it was the 1.4 for the copyright, which is what we're here for today. The commissions that were on top of that had not been paid going back to March and going through to the end of the year, which were ultimately paid on August 31st and are not in dispute in this appeal. So moving back, I think the next sort of piece, moving forward quickly in order to address sort of the high notes, I think the next issue that's important is the absurdity of the result. If this panel were to accept the definition that's being suggested by PROMEDEV, if that interpretation were utilized for purposes of the contract, then the services, the additional services, it says very clearly, may be provided, not that they must. And per their interpretation, would not be paid for even if provided because the payment has already been made, which is really the definition of illusory. You don't have to do it and I'm not going to pay for it if you do do it. That's not in terms of contractual interpretation. You have to give effect to those words and to do so in a way that would render the contract illusory is not one of the acceptable alternatives. If, for example, he produced zero creative, he would get six percent. If he produced 20,000 creative, he would get six percent. If they did a boatload of commissions. But zero creative, it would be the exact same as if they did very minimal. And a ton of creative, but but isn't the I mean, maybe this is just another way of saying what you said the key issue is, but if one looks at paragraph four, the client will be charged for additional products and or services as ordered by the client, which are not part of the services covered by the terms of this agreement. So, I mean, the the contract question or one of the contract questions is, is what you claimed that you were owed part of the services, part of the covered by the agreement or not? Yeah. And I think the critical part there, Your Honor, is it says part of the services capitalized. So we then go back to the preamble and those are advertising, marketing and related services. The district court found, based in part on course of conduct, that the services that were attempted to be billed through this one point three eight million creative services were baked into MaxMedia's commission payments. Is it your position that that finding is clearly erroneous? Yes. Yeah. And the biggest reason is what I pointed out before with paragraph five, that ignores the fact that the invoice can be issued at any time. And if you look at that invoice, he even writes on it can be issued at any time. So in order to reach that finding, you have to ignore the fact that he was allowed to invoice at any time. And the contract clearly says that. So you can't ignore it. You can't use course of conduct when the very contract says I don't have to do it. And you're saying because you didn't do it, I'm saying you don't have a contractual right. It's totally ignored and not addressed, if I recall correctly, in the district judge's opinion. And I think the last piece for purposes of today, since I'm running low on time, is giving effect to all of the language. And we've addressed a little bit some of it already. But I think the easiest one is paragraph four, where it says you're paying for media placement and buying six percent. It doesn't say you're paying for services six percent. It says you're paying for media placement and buying. This court will not find another provision other than the one that we emphasize that makes payment for anything else other than, quote, media placement and buying, which everyone admits the creative services are not. Moreover, why would the additional services provision even be in there when there is no provision for compensation for them? That would render the entire issue superfluous. But since I'm running low on time, I would make one note that I think is significant here, which is the district judge found that the contract language was so unambiguous as to render summary judgment appropriate. I'm before you today arguing it's clearly the opposite, i.e. it's so unambiguous that summary judgment should have been entered in front of Max and Media or in favor of Max and Media. But obviously, there is a third alternative, right, which is there is ambiguity for a reasonable person reading this contract. And that ambiguity ought to be decided by a trial. But of course, that also would require this court to reverse the summary judgment ruling and remand for a trial on the issues. So I'll reserve the right. Quick question. Did your firm try this case below? I mean, through summary judgment, yes. Yes. And you, were you the lawyer? Yes, I was one of them. And you or your firm was sanctioned? That's true. Based on the copyright claims? That is true. OK, thank you. There is a button down there and you can press it. She can help you with it. I think I'm going to need it. I think there's a little height. It'll lower it for you. Your friend on the other side is a little taller. Just a little taller. See how far down this goes. Wherever you want. How's that, Your Honors? That's fine. You hear me? Yes. Perfect. Thank you, Your Honors. And good morning. My name is Leanna Bash and I'm here on behalf of the Appley in this matter, Promodev LLC. And I think I'd like to start just by talking again, picking up where my friend on the other side left off, talking about the plain language of the contract, because if you look at the contract, you can see there is no ambiguity. The district court did not find any ambiguity. And would you speak up a little bit? Yes. I'm so sorry. Yes, Your Honor. How is that? Is that better? That's better. Perfect. Project, please. Thank you. I'm so sorry. So, Your Honors, looking at section one of the contract, you'll see that this is a paragraph entitled Services with a capital S. And this portion of the contract defines services to include three categories of  First, there is the purchase and placement of TV media advertisement. Second, there is the purchase and placement of other types of advertising, including print, outdoor, et cetera. And third, there are additional services, which can include research, market planning, public relations, web, digital design and creative services. And so that creative services language in paragraph one is really what is critical for our conversation here today. So when you look at this paragraph one, this is the definition of services, capital S, and that includes creative services. Well, but it's additional services is the is the sentence additional services may include, but are not limited to. That's correct, Your Honor. And so and I think when you look also at the preamble, it defines the phrase services as advertising, marketing and related services as more particularly described below. And then when you look at paragraph one, it explains services includes the this purchase and placement of different types of media and additional services, including the creative services as one bucket of additional services. Are you saying that in your view, the last sentence of paragraph one, that those are included in the commission structure? Yes, Your Honor. OK, then then why would in paragraph four the client will be charged for additional products and or services as ordered by the client? So what is the difference between the free additional services at the end of paragraph one and the non-free additional services in paragraph four? So I'll say, Your Honor, the the key language there in paragraph four is the client will be charged for additional products and or services as ordered by the client, which are not part of the services. Capital S. So that is referring back to paragraph one, which does define these additional services, including creative services as part of services. Would that be other than creative services? So that's that's a that actually is borne out in the record. There there were additional services that were paid for separately. One example of that you can find in the record on 7ER1586. And you'll see there it's a spreadsheet of expenses and other services that were paid for separately. And there's a line item for ad backup and file data restoration. And that's a service that Maximedia provided to Promodev where it backed up certain ads and made sure that they were backed up to the cloud. And that was a fee that they invoiced two thousand dollars for. So in general, paragraph one services are broad. That's supposed to cover the range of the relationship between the parties. But this this additional language in paragraph four about additional products and slash or services is still a catch all for something else that might arise in that file backup and file restoration is an example of how that actually played out between the parties. I also would note, your honor, setting aside the language of the contract, the language of the oh, go ahead. And you said there was an invoice for two thousand dollars for under paragraph four. That's correct, your honor. Yes, it was that with relation to the time of termination. So I believe, your honor, that that was that was an invoice of expenses that was sent around the time of termination. And when you look at it's a spreadsheet, that specific record site, it has other expenses, for example, travel expenses. And those all were paid for. And did you kind of pay the two thousand dollars? Yes, your honor. Yes, your honor. And we did, to be clear, the client paid all of those expenses and all of the outstanding monthly commissions before the agreement terminated by September 1st, twenty, twenty two, including the ones before the contract was signed. Yes, your honor, the ones before the contract was signed, those were those were also paid for. Yes. So the only outstanding amount is just that's at issue on appeal here is just that invoice for one point three eight million dollars for creative services and your honors under Washington and what the district under Washington law and what the district court did below was also look to the course of dealing of the parties, which to the extent there's any question about the language of the contract, the course of creative services were baked into the monthly commission fee. You can see that in the negotiations between the party in crafting this language before the contract was signed. You can see it in the actual performance of the contract where you can see that, as as noted today, there was not a single invoice for creative services sent between the date the contract was signed on July 1st, twenty, twenty, and the date that my client issued its notice of termination on July 1st, twenty, twenty two. And finally, if you look at the actual invoice at issue itself, you will see that it is a blanket request for one point three eight million dollars without any itemization about what those services were, which advertisements they relate to. It just says one point three eight million dollars for over one hundred and seventy ads performed throughout the course of the relationship of the parties, some of which were from before the contract was even signed. So all of this evidence shows there can be no genuine dispute of material fact. Was there any itemization submitted in the declarations of the Apple appellant? There there was not. So so actually, in this case, your honor, the appellant did testify at his deposition originally that he had documents itemizing all of the creative services, that he had records showing how he got to that one point three eight million dollars. My client requested that evidence in discovery and his counsel then had to withdraw that testimony and state, in fact, that he did not have any evidence. And his declaration states that it was an estimate of services rendered. It was it was an estimate. It was his best estimate. The one point three is his best estimate post hoc post hoc. Correct. Correct, your honor. And there were no records produced that support that one point three eight million dollar number. Your honors, and I think just reiterating the point I was making about the invoice, the invoice itself does does show reflect the intention of both parties. And there is no evidence presented in the district court or referenced on appeal that that indicate any other reasonable inference that could be drawn. I do note in their appellate brief, appellants cite to several pieces of purported evidence showing that that the parties understood creative services would be invoiced separately. But all of that evidence actually predates the signing of the contract. So they do cite to a twenty eighteen email asking for the amounts paid for creative services. Again, that's before the contract was signed and that's when those services were paid for separately. And they also reference the pre agreement invoices that were a question as to the pre contract creative services invoices. Were they itemized? Yes, your honor. So if you look at the record at seven ER one six three four, that's an invoice that shows for three specific ads that each ad was invoiced three hundred dollars per ad for post production services. And it actually lists the name of each advertisement. It lists three hundred dollars for each ad, and then it has a total of nine hundred dollars charged for creative services. So, again, comparing that to the invoice that's issued after the notice of termination is sent, there really can be no reasonable inference drawn from that invoice that anyone understood that that was inappropriate. Have you figured out how many hours one point three million three hundred dollars works? So, your honor, the three hundred dollars was per advertisement. So that was a he was they were charging three hundred dollars per ad. So the math does not work out whatsoever on the one point three eight. That is something like seven thousand dollars per advertisement that that were claimed to be at issue. Your honors, I would like to also spend a little bit of time on the party's remaining claims, unless you have other other questions about the contract. I heard the appellant's counsel say today that all of these claims really rise and fall on the contract. And I do want to note that even if the court were to rule against us on the interpretation of the contract, these copyright and intellectual property claims that they allege in their in their opening brief still fail as a matter of law standing on their own. So the copyright claims do fall into sort of two buckets. There is a claim based on truly copyright that are based on eight copyrights that Maximedia registered. And I would just note there's no possible like there's no support in the law for continuing on those copyright claims because there can be no copying by Promodev. Those claims all relate to ads that were ads that Promodev, your client, created. That's correct, your honor. There are ads that we created. I think there may be some disputes of fact between the parties about how much Maximedia might have assisted in that. But in general, Promodev was responsible for the place. The ads, they billed you and you paid. Correct. I mean, you weren't doing your own placing. Correct, your honor. Yes, they placed the ads. And for these ads that are at issue in this claim, these eight, they were placed by Maximedia and they ran while the contract was still in place in July and August of 2022. So there can be no argument whatsoever that Promodev engaged in any kind of illegal behavior. There are also some some claims referenced in the brief that I think are not necessarily clear the legal theory, but we wanted to make sure we briefed the the contract's non-compete provision just out of an abundance of caution. And I would note, your honor, that that is is an issue that Promodev raised in its complaint or that Maximedia raised in its counterclaims. Promodev moved for summary judgment on the breach of the non-compete agreement in the contract and Maximedia did not respond. So the district court found that that claim was waived. I also would note, your honor, that they did not brief it or assign error to it in their opening brief to this court. We again, we briefed it out of an abundance of caution, but our position would be that that's been waived twice over. And regardless, it is a claim that has no no merit, no grounding in the contract, which provides that the non-compete was only for placement of television services and the ads at issue were placed on digital streaming services. And finally, your honors, I would like to touch on the issue of fees because that is something they've briefed and I do think it's something that's important to discuss. There's a bit of confusion in the briefing. The district court below ordered attorney's fees would be granted to Promodev based on for its fees incurred in defending against the copyright claims. And as your honors noted earlier, the copyright claims were dismissed on summary judgment. The district court issued a show cause order asking Maximedia's counsel to explain why rule 11 sanctions should not be entered against them because of the frivolous nature of these copyright claims. And then after briefing from both parties, the district court then granted those rule 11 sanctions, finding that there was no basis in the law to pursue those copyright claims and that they were frivolous and bad faith litigation. Promodev then sought its fees in defending against those claims. And that is what the district court granted. The district court did not grant fees to Promodev as the prevailing party under the contract. The contract has no bearing whatsoever on this award of fees. And the district court also did not grant any fees, for example, under equitable theories. These are purely copyright claims that were granted under the copyright fees granted under the Copyright Act. And the district court properly applied the factors laid out by this court in the Shame on You case and found that those fees were appropriate given the extraordinary nature of this case and those claims. Interesting case title. It is an interesting case title. It is Shame on You. That is correct, Your Honor. I take it that when your client applied for fees, you distinguished between defending the contract action and fees simply defending the copyright claim. Yes, Your Honor, when we originally moved below, we did. Yes, yes, yes, we did. We moved for both. And then we we submitted supplemental briefing itemizing just the contract fees. And the district court actually still analyzed that, discounted those fees to what what they thought was appropriate. Is there any claim by the appellate that the fees were calculated on incorrect hourly rates or the amount of hours? No, Your Honor. They have not raised those claims. The only argument I understand is that is that fees were improper. At all. Correct. Yes, correct, Your Honors. So, Your Honors, with that, unless you have any further questions for me, I would say we respectfully urge that you affirm the district court in whole. Thank you. Thank you. All right. Thank you. Let me address the sort of what I'll call the peripheral issues first and then get back to what I perceive to be the meat of it. The copyright related claims obviously are twofold. The judge's first determination, i.e. that they had been paid for and therefore were owned by Promodev, is, of course, the crux of what we're here for. The second piece of that determination obviously would be an issue of fact in the event that the court were to overturn in the event that court would overturn the original contractual interpretation. Copyright infringement when I went to law school has two elements. One is the valid ownership of a copyright. Let's assume that you've satisfied that. The second element is copying. By what stretch of the imagination did Promodev copy copyrighted material? Use would be my phrase for the second part of it, Your Honor. But yes, the use component was using copyrighted material that they did not own. Particularly, we emphasize. How use? How did they use it? Publication. By allowing it to go out? On Fox News. Okay. Which your client placed. The original placement was done. And then during the disputed period, there were two issues of fact. If the court looks at my client's declaration, he allowed it after being told that it would be paid for. And obviously, there was a reservation of rights at issue to say, hey, we're not saying that we're not getting paid for this, but off we go. And so it was determined at the time that it would be better for the parties to allow that to proceed as contractually obligated by Fox, not pull the plug, but without taking away those issues. And he was told at the time that he would be paid. Obviously, later they were paid for a lot of it after hiring lawyers and lawsuits, but were never paid for the one point three eight million dollars. And so that's the copyright related issues. And then I think the other component before I sort of close on the contractual issues is the attorney's fees provision. The attorney's fees provision was not based on, if this panel reads the order, the copyright and the copyrights that were not registered. It was based on all of them. The court did not attempt to distinguish the fact that some of them were registered copyrights. And Judge Hawkins, you'd asked this question. I was hoping to avoid it. We specifically did not appeal the sanctions issue, even though I vehemently disagree with it because I think it distracts from my client's cause. And so I'm not going to address it here today. But we do believe that there is no question that copyright claims were being made. We believe if the contract is read as we suggest it should be correctly. And there's no doubt that those claims were appropriate. The issue is some of them were not registered yet. There was a motion to strike on that, which was denied. We proceeded through discovery and ultimately limited those claims. The sum is like a hundred. It was. I think it's more, to be honest. Yes. And the registered ones were what, eight? They were at the time. Yeah. But obviously there were contractual issues that dealt with all of the hundred, like who owned them. You know, Promodev made that claim. So we're going to have to do that discovery anyway. Obviously, going back, I'd do it differently. But, you know, that is what it is. And I don't I don't want to distract from my client's cause. And in fact, I have 30 seconds. So I'll just make two final points. Number one, I think this panel cannot reconcile the first sentence of paragraph four with any interpretation other than ours. The only fee is for media placement and buying. And number two, I do not think the panel can place the weight that the district judge did on course of conduct because paragraph five says he can invoice at any time. And he did so. You cannot then hold it against him that he didn't as a course of conduct argument when the contract itself says you can do it otherwise. So we believe that the contract on face favors my client's position and that summary judgment should be entered in his favor on the contract claims and then the other claims that will follow from that, like copyright, have other questions to be answered. But even in the event the panel wanted to conclude counsel. Yes. Even in the event you disagree with that, we think there's sufficient ambiguity for it to be reversed and sent back for trier effect. All right. We thank counsel for their arguments. And the case just argued is submitted. With that, we are adjourned for the day.
judges: HAWKINS, BEA, BENNETT